## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANIBAL MELENDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-193-SLR |
| | ) | |
| WARDEN CARROLL, LARRY MCGUIGAN, BETTY BRIAN, LT. STAIN, CPT MERSON, CPT. SAGAR, NATE GARDELS, CPT. BELANGER, MICHAEL ALLEN, and INTERNAL AFFAIRS, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

### STATEMENT OF FACTS

1. This prisoner civil rights action was filed by the *pro se* plaintiff Anibal Melendez ("Plaintiff") on March 30, 2004 pursuant to 42 *U.S.C.* § 1983. [D.I. 2]. Plaintiff named as defendants Warden Thomas Carroll, Deputy Warden Larry McGuigan, Corporal Lise Merson, Captain Clyde Sagers, Officer James Gardels, Captain Joseph Belanger, Officer Michael Allen, and Internal Affairs. On March 4, 2005, Plaintiff amended the Complaint to add Lt. James Stanton as a defendant. [D.I. 29]. (Stanton and the previously listed defendants are referenced hereinafter as "State Defendants"). He also added health care provider Nurse Bryant as a defendant.[1] Plaintiff asserts that he was subjected to excessive force by State Defendants and that he did not receive treatment for his injuries from the health care provider. [D.I. 2].

---

[1] This Motion for Partial Summary Judgment is filed on behalf of State Defendants only.

2.      Plaintiff's claim arises from an incident which allegedly occurred in December 2003 when Plaintiff was incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware.[2]  At the time, Plaintiff was housed in SHU, the maximum security housing unit at DCC.

3.      On the date in question, Plaintiff became involved in a dispute with defendant correctional officer James Gardels ("Gardels") concerning Gardels' refusal to give Plaintiff bread with his food tray at lunchtime.  Exhibit C at 25-28.[3]  Sometime after lunch, Gardels returned to Plaintiff's cell with defendant correctional officer Michael Allen ("Allen").  Plaintiff claims that Gardels and Allen entered his cell and assaulted him.  Exhibit C at 40-48.

4.      When, at about 3:00 p.m., Nurse Bryant came to Plaintiff's cell to dispense medication, Plaintiff told her about the assault and requested medical care.  She responded that she did not believe him.  She also indicated that she would tell defendant Lt. James Stanton ("Stanton") about the assault.  *Id.* at 51-57.  Stanton subsequently came to Plaintiff's cell.  Plaintiff told him about the incident and displayed his bruises.  Stanton left and did nothing to respond to Plaintiff's complaints.  *Id.* at 58-59.

5.      At about 10:15 that evening, Plaintiff tried to commit suicide by tying a sheet to the vent above the toilet with the other end around his neck.  *Id.* at 61.  Correctional officers observed Plaintiff's actions, entered his cell, directed him to get down from the toilet and

---

[2] In the Complaint, Plaintiff alleges that the incident occurred on December 7, 2003, although other documentation suggests that the incident occurred on December 10, 2003.  (Ex. A; Ex. B).
[3] Plaintiff asserts that he had prior incidents where Gardels refused to give him his food.  Exhibit C at 120-121.  An October 9, 2003 incident reports shows that Melendez argued with Gardels regarding his bread.  Exhibit D.

2

transported him to the infirmary. *Id.* at 63-65; Exhibit A. Plaintiff spent three weeks in the infirmary. Exhibit C at 68-73.

6. Plaintiff claims that after he was returned to SHU, on one occasion Gardels refused to give him food and on other occasions would not allow him to have his recreation time. *Id.* at 73-74. He also alleges that on one occasion Gardels made a comment to him that he found to be threatening. *Id.* at 74-75. He had no other problems with Gardels. *Id.* at 74.

7. He had no problems with Allen other than the alleged assault. *Id.* at 79-80.

8. Plaintiff claims that while he was in the infirmary, he spoke to defendant Captain Joseph Belanger ("Belanger"). He told Belanger about the assault by Gardels and Allen, and Belanger took no action. *Id.* at 115-116.

9. On December 15, 2003, Plaintiff filed a grievance complaining about the assault. Exhibit B. He received a response to the grievance on January 5, 2004 directing him to write a letter to the appropriate supervisor. *Id.*

10. Plaintiff claims that he did this by writing to Captain Clyder Sagers ("Sagers"). He did not receive a response. *Id.* at 96.

11. Plaintiff similarly claims that he wrote to defendants Internal Affairs, Deputy Warden Larry McGuigan ("McGuigan") and Warden Thomas Carroll ("Carroll") about the assault and received no response. *Id.* at 120-123. He also claims that he advised these defendants, before the assault, that Gardels had refused to give him food. *Id.*

3

12.     There are no claims that Carroll, McGuigan, Stanton, Merson, Sagers, Belanger or anyone from Internal Affairs were present during the alleged assault or had any information about it until after it occurred.

13.     Plaintiff alleges that the assault by Gardels and Allen caused him to sustain various bruises, which resolved approximately six weeks later. *Id.* at 81  He also claims that he sustained injury to his neck, which continues to cause him pain. *Id.* at 81-2.

## **MEMORANDUM OF LAW**

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

There is no genuine issue of material fact as to the liability of State Defendants in their official capacities and, therefore, they are entitled to judgment as a matter of law.  Further, under the undisputed facts, State Defendants Carroll, McGuigan, Sagers, Belanger, Stanton, Merson and Internal Affairs cannot be held liable in their individual capacities and are entitled to judgment.

I. **UNDER THE ELEVENTH AMENDMENT, STATE DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES.**

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, State Defendants cannot be held liable in their official capacities.

**II.     INTERNAL AFFAIRS CANNOT BE HELD LIABLE BECAUSE IT IS NOT A PERSON WITHIN THE MEANING OF 42 *U.S.C.* § 1983.**

To state a claim under 42 *U.S.C.* § 1983, Plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff has named the Delaware Department of Correction's Internal Affairs Unit as a defendant in this action. Internal Affairs is an agency of the State of Delaware. *See Evans v. Division of Probation and Parole,* 2004 WL 2009369, at *2 (D. Del. Aug. 25, 2004) (Exhibit E) (holding that Department of Correction's Division of Probation and Parole was an agency of the State). Consequently, Internal Affairs is not a "person" within the meaning of 42 *U.S.C.* § 1983. *Id. See also Ospina*, 749 F. Supp. at 577.

Because Internal Affairs is not a "person" within the meaning of Section 1983, it cannot be held liable to Plaintiff and is entitled to judgment as a matter of law.

**III.    STATE DEFENDANTS DID NOT VIOLATE PLAINTIFF'S RIGHT TO ADEQUATE MEDICAL CARE.**

Plaintiff claims that he did not receive medical care for injuries sustained as the result of the alleged assault. However, at the same time, he concedes that, after the assault, he was taken to the infirmary and given pain killers and medication. D.I. 2 at ¶ 26.

To establish a violation of his Eighth Amendment right to adequate medical care, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

With respect to the second requirement, a prison official's denial of an inmate's reasonable request for medical care constitutes deliberate indifference if the denial of the request causes the inmate to experience undue suffering or the threat of tangible residual injury. *Williams v. First Correctional Medical*, 377 F. Supp. 2d 473, 476 (D. Del. 2005). In addition, deliberate indifference may be established if "necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment." *Id. See also Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). However, a prison official is deliberately indifferent only where he or she has the required mental state. *Williams,* 377 F. Supp. 2d at 476. That is, a prison official can be held liable only where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere allegations of negligence do not meet the pleading requirements for deliberate indifference. *Estelle*, 429 U.S. at 105-106.

Further, when some care has been provided, questions as to the adequacy or propriety of the care will not support an Eighth Amendment claim. *Smullen v. Kearney*, 2003 WL 21383727, at *3 (D. Del. June 13, 2003) (Exhibit F).

In this case, Plaintiff's claim that his request for medical care was ignored is not supported by the record. He admitted that he was taken to the infirmary and treated. D.I. 2 at ¶ 26. While he may feel that he received inappropriate care, such a claim does not state a constitutional violation.

7

Therefore, on these facts, State Defendants are entitled to summary judgment on Plaintiff's claim of inadequate medical care.

### IV. STATE DEFENDANTS CARROLL, MCGUIGAN, STANTON, MERSON, SAGERS, BELANGER AND INTERNAL AFFAIRS DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS.

A. THEY HAD NO PERSONAL INVOLVEMENT IN THE ALLEGED ASSAULT.

The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207.

In this case, it is undisputed that State Defendants Carroll, McGuigan, Stanton, Merson, Sagers, Belanger and personnel from Internal Affairs were not present during the alleged assault and had no personal involvement in the incident. Further, there is no allegation that these State Defendants played any role in or had knowledge of Gardels' alleged actions after the assault in denying Plaintiff food on one occasion and recreation on other occasions.

In the absence of any allegations that they personally participated in the alleged wrongful conduct, Plaintiff has failed to state a claim and these State Defendants are entitled to judgment as a matter of law. *See Murphy v. Kearney*, 2004 WL 878467 (D. Del. April 19, 2004) (Exhibit G) (prison warden entitled to summary judgment where there were no allegations of personal involvement).

### B. CARROLL, MCGUIGAN AND INTERNAL AFFAIRS WERE NOT DELIBERATELY INDIFFERENT TO AN UNREASONABLE RISK TO PLAINTIFF.

Plaintiff testified that, prior to the assault, he advised Carroll, McGuigan and Internal Affairs that Gardels had refused to give him his food on occasion. Exhibit C at 120-121. He is, in effect, arguing that these State Defendants were put on notice of Gardels' wrongful conduct and, therefore, should be held liable for that conduct.

A supervisory public official may be held liable for a subordinate's constitutional tort only where the official was the "moving force" behind the violation or exhibited "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). *See also City of Canton v. Harris*, 489 U.S. 378, 391 (1989). To impose liability on an official for failure to adequately supervise or control the conduct giving rise to his claim, the plaintiff must demonstrate that: 1) an existing policy or practice created an unreasonable risk of Eighth Amendment injury; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. The plaintiff must identify what the supervisory official failed to do that demonstrates his deliberate indifference and a close causal relationship between the identified deficiency and the ultimate injury. *Sample*, 885 F.2d at 1118.

Even assuming that Carroll, McGuigan and Internal Affairs were put on notice that Gardels failed to give Plaintiff his food, Plaintiff cannot show that they were aware of and deliberately indifferent to an unreasonable risk that he would be assaulted. He cannot show any causal relationship between the claimed deficiency, the failure to address his complaint regarding

9

food, and the ultimate alleged injury of being subjected to excessive force.

While there may be a factual dispute as to whether these State Defendants were aware of an unreasonable risk that Plaintiff would be denied food, Plaintiff cannot show that there was an unreasonable risk that he would be assaulted or that these State Defendants were deliberately indifferent to that unreasonable risk. *Sample*, 885 F.2d at 1118.

Therefore, on these facts, State Defendants Carroll, McGuigan and Internal Affairs are entitled to judgment as a matter of law.

## V. STATE DEFENDANTS CARROLL, MCGUIGAN, STANTON, MERSON, SAGERS, BELANGER AND INTERNAL AFFAIRS ARE ENTITLED TO QUALIFIED IMMUNITY IN THEIR INDIVIDUAL CAPACITIES.

To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz,* 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

With respect to Plaintiff's claim of denial of medical care, State Defendants did not delay or bar Plaintiff's access to care. As he admits, Plaintiff was taken to the infirmary and treated with medication and pain killers. The courts have held that, as long as some care is provided, there is no constitutional violation. *See Smullen v. Kearney* (Exhibit F). Therefore, reasonable officials in State Defendants' circumstances could not know that their conduct would present a constitutional violation.

With respect to Plaintiff's claim of excessive force, because State Defendants Carroll, McGuigan, Stanton, Merson, Sagers, Belanger and Internal Affairs were not personally involved in the alleged assault, Plaintiff cannot meet the threshold requirement of showing that these State Defendants violated his constitutional rights.

With respect to Plaintiff's claim that Carroll, McGuigan and Internal Affairs were on notice of Gardels' wrongful conduct, Plaintiff complained only that Gardels denied him food. This complaint could not possibly put these State Defendants on notice that Gardels might assault Plaintiff. Any failure to investigate claims that Plaintiff was not provided with food does not demonstrate deliberate indifference to an unreasonable risk that Plaintiff would be assaulted. Therefore, reasonable officials in these State Defendants' circumstances could not know that their conduct would present a constitutional violation.

State Defendants Carroll, McGuigan, Stanton, Merson, Sagers, Belanger and Internal Affairs are entitled to qualified immunity as a matter of law and cannot be held liable to Plaintiff in their individual capacities.

WHEREFORE, State Defendants respectfully request that this Court grant partial summary judgment in their favor.

                       STATE OF DELAWARE
                       DEPARTMENT OF JUSTICE

                       /s/ Eileen Kelly
                       Deputy Attorney General
                       Carvel State Building
                       820 N. French Street, 6th Floor
                       Wilmington, Delaware 19801
                       (302) 577-8400
                       eileen.kelly@state.de.us
Dated: November 23, 2005         Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2005, I electronically filed *State Defendants' Memorandum of Points And Authorities In Support of Their Motion for Partial Summary Judgment* with the Clerk of Court using CM/ECF.  I hereby certify that on November 23, 2005, I have mailed by United States Postal Service, the document to the following non-registered party:  Anibal Melendez.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us