IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANIBAL MELENDEZ, )<br>   )<br>       Plaintiff, )<br>   )<br>   v. )<br>   )<br>WARDEN CARROLL, LARRY )<br>MCGUIGAN, BETTY BRIAN, LT. )<br>STAIN, CPT MERSON, CPT. SAGAR,)<br>NATE GARDELS, CPT. BELANGER, )<br>MICHAEL ALLEN, and INTERNAL )<br>AFFAIRS, )<br>   )<br>       Defendants. ) | Civ. No. 04-193-SLR |

Anibal G. Melendez, Delaware Correctional Center, Smyrna, Delaware. Plaintiff, pro se.

Eileen Kelly, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware. Counsel for Thomas Carroll, Larry McGuigan, James Stanton, Lise Merson, Clyde Sagers, James Gardels, Joseph Belanger, Michael Allen, and Internal Affairs.

**MEMORANDUM OPINION**

Dated: August 4, 2006
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I. INTRODUCTION

On March 30, 2004, Anibal G. Melendez, a pro se plaintiff proceeding in forma pauperis, filed the present action pursuant to 42 U.S.C. § 1983 against State defendants Warden Thomas Carroll ("Carroll"), Deputy Warden Larry McGuigan ("McGuigan"), Lieutenant James Stanton ("Stanton"), Corporal Lise Merson ("Merson"), Captain Clyde Sagers ("Sagers"), Officer James Gardels ("Gardels"), Captain Joseph Belanger ("Belanger"), Officer Michael Allen ("Allen"), and Internal Affairs (collectively "defendants").[1] Plaintiff is currently an inmate at Delaware Correctional Center ("DCC") in Smyrna, Delaware. In his amended complaint, plaintiff alleges he was subjected to excessive force and was denied medical treatment by defendants in violation of the Eighth Amendment of the United States Constitution.[2] (D.I. 11) Plaintiff's complaint also includes state law claims of negligence and assault and battery. (Id.)

On November 23, 2005, defendants filed a motion for partial summary judgment seeking judgment in favor of all defendants in their official capacities and judgment in favor of defendants

---

[1] Plaintiff has agreed to remove Internal Affairs as a defendant. (D.I. 72 at 2) Nurse Betty Bryant is also listed as a defendant but has not been served, is not represented by counsel, and is not a party to any motions.

[2] Plaintiff subsequently filed a second amended complaint (D.I. 45) in order to correct the spellings of two names, but the first amended complaint (D.I. 11) will be cited because the second amended complaint only includes the corrected paragraphs.

Carroll, McGuigan, Stanton, Merson, Sagers, Belanger, and Internal Affairs in their personal capacities.[3] (D.I. 65) Plaintiff opposes summary judgment. (D.I. 72) Plaintiff has also filed a motion to compel discovery. (D.I. 79)

## II. BACKGROUND

Plaintiff's claims arise from an incident that occurred in December 2003 while plaintiff was housed in a maximum security unit at DCC.[4] (D.I. 11 at ¶ 13) According to the allegations in the complaint, on the day in question, plaintiff became involved in a dispute with Correctional Officer defendant Gardels regarding defendant Gardels' refusal to give plaintiff food at lunch time. Defendant Gardels left plaintiff and returned with Correctional Officer defendant Allen shortly after the dispute. (Id. at ¶ 17) Defendants Allen and Gardels allegedly entered plaintiff's cell and assaulted him, which caused visible bruising and multiple lacerations. (Id. at ¶¶ 18-21) Around 4:00 p.m. that afternoon, Nurse Betty Bryant passed plaintiff's cell and did not believe plaintiff when he stated he required medical care. (D.I. 66, Ex. C at 58) She told plaintiff she would report the request to defendant Stanton, the tier lieutenant, who

---

[3]Defendants are not seeking summary judgment for any claims against defendants Gardels or Allen in their personal capacities or any claims involving defendant Bryant.

[4]The alleged incident likely happened on December 10, 2003. (D.I. 11 at ¶ 14, D.I. 66 at 2)

2

came to plaintiff's cell at some point between 11:00 pm and midnight that night. (Id. at 58-59)  Defendant Stanton allegedly observed plaintiff's bruises and did nothing in response to plaintiff's complaints.  (D.I. 11 at ¶¶ 26-29)

Approximately an hour after defendant Stanton left plaintiff's cell, plaintiff attempted suicide and was taken to the infirmary, where he spent the following three weeks.[5]  (D.I. 66, Ex. C at 62, 68)  He received Motrin pain killers at some point after arriving at the infirmary. (Id. at 69-70)  While in the infirmary, plaintiff told defendant Belanger, a shift commander, about the alleged assault, but defendant Belanger did nothing in response.  (D.I. 11 at ¶ 25)

On December 15, 2005 plaintiff filed a grievance complaining about the assault and received a response from defendant Merson directing him to write a letter to an appropriate supervisor, Captain Henry.  (D.I. 72, Ex. A at 1)  Plaintiff then filed a second, less-detailed grievance on January 8, 2004 and was directed by defendant Merson to instead write a letter to another supervisor, defendant Belanger.  (Id. at 9)  Plaintiff filed an additional grievance on January 20, 2004 and was again directed

---

[5]The DCC Incident Report indicates that plaintiff attempted suicide around 10:15 pm, but in his deposition, plaintiff said he attempted suicide around 11:30 pm and was taken to the infirmary around 1:00 am.  (D.I. 66, Ex. A; D.I. 66, Ex. C at 62, 68) Plaintiff's medical records indicate he was being observed in his cell in the infirmary by 1:15 am.  (D.I. 59)

3

by defendant Merson to instead write a letter to defendant Sagers, another appropriate supervisor. (Id. at 4) Plaintiff claims he wrote to defendant Sagers, the supervisor of all building staff, but did not receive any reply to his letter.[6] (D.I. 66 at 3)

Plaintiff also alleges he wrote about the incident in letters to Internal Affairs, defendant McGuigan, and defendant Carroll but did not receive any responses. (D.I. 11 at ¶ 24) Plaintiff alleges he filed complaints regarding correctional officers with these three defendants prior to the assault. In an October 22, 2003 letter to Warden Carroll, plaintiff complained that officers had unfairly limited his recreational time, lunch, phone calls, access to medical care and also "put their hands on me and other minor stuff." (D.I. 72, Ex. D) Although an affidavit by Warden Carroll asserts that plaintiff's October 22, 2003 letter informed him of "assaults in cell by officers James Gardels and Michael Allen," the text of the actual letter does not mention specific officers. (Id.) Beyond the single line in the October 22 letter, plaintiff has not made any further official allegations of physical contact or abuse by guards prior to the December incident. (D.I. 66 at 3) Plaintiff's bruises from the incident have since healed, but he claims to still have

---

[6]Plaintiff never wrote letters to Captain Henry or defendant Belanger regarding his first two grievances.

4

neck pain resulting from the incident. (Id. at 4)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be

5

sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Eleventh Amendment Immunity

At the outset, the court notes that the Eleventh Amendment bars suit against defendants in their official capacities. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). All parties agree that a State may waive its Eleventh Amendment immunity, but plaintiff does not allege that defendants have done so in this case. (D.I. 72 at 2) Suits seeking prospective injunctive relief against State officials acting in violation of federal law are not barred by the Eleventh Amendment. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). However, plaintiff's demand for prospective injunctive relief regarding his medical care was not pursued by plaintiff and is moot given

that he received the desired medical appointment.[7] (D.I. 72, Ex. A at 12) Defendants are granted summary judgment as to all claims against them in their official capacities.

### B. Allegations of Inadequate Medical Care

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. See id. at 104-05. The Court articulated that "in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Therefore, to succeed under these principles, a plaintiff must demonstrate (1) that the State defendants were deliberately indifferent to his medical needs and (2) that those needs were serious. See id. It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference."

The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where the prison official: (1) Knows of a prisoner's need for medical treatment but

---

[7] Plaintiff's medical appointment was scheduled on April 26, 2004, four weeks after plaintiff filed his original complaint. (D.I. 72, Ex. A at 12)

intentionally refuses to provide it; (2) Delays necessary medical treatment based on a non-medical reason; or (3) Prevents a prisoner from receiving needed or recommended medical treatment. See Durmer v. Carroll, 991 F.2d 64, 68 (D.N.J. 1993) (citing Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987)). When denial of an inmate's request for medical care causes "undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." Monmouth, 834 F.2d at 346.

In his complaint, plaintiff claims he was denied access to medical care both on the day of the December incident and subsequent to that day.[8] (D.I. 11 at ¶¶ 27-32) Defendants contend that plaintiff's claim of denied medical care cannot stand because he was taken to the infirmary and given pain killing medication the same day as the alleged assault. (D.I. 76 at 2) The most plaintiff can claim is that his access to pain medication was delayed by defendants for several hours. This claim is deficient as to defendants Carroll, McGuigan, Merson, Sagers, and Belanger because they did not become aware of any delay until well afterwards.[9] Defendant Stanton was put on

---

[8] Plaintiff does not challenge summary judgment for any claims for a continued denial of medical care after the incident. (D.I. 72 at 3)

[9] Defendants do not address plaintiff's claim against defendant Stanton and, instead, treat all defendants collectively.

8

notice around 11:00 pm the day of the incident, when plaintiff requested medical attention. Plaintiff asserts that defendant Stanton did not promptly arrange for medical care. Within approximately an hour, plaintiff was admitted to the infirmary.

Few courts within the Third Circuit have addressed cases alleging a constitutional violation based on a delay of medical care to an inmate, but multiple courts have relied on precedent from the Eighth and Eleventh Circuits. See, e.g., Qawi v. Howard, No. Civ.A. 98-220, 2000 WL 1010281 (D. Del. 2000); McGovern v. City of New Jersey, No. 98-CV-5186, 2006 WL 42236 (D.N.J. 2006); Mantz v. Chain, 239 F. Supp.2d 486, 504-05 (D.N.J. 2002). Where, as here, the inmate alleges a delay in medical treatment, but not an outright denial of medical care, "the objective seriousness of the deprivation should . . . be measured 'by reference to the effect of delay in treatment.'" Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)). The Beyerbach and Hill courts required inmates to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed" on a claim. Id.

There is no evidence of record to establish a detrimental effect resulting from a delay in receiving pain killers for up to a few hours. The court concludes that the delay in medical care

9

alleged by plaintiff cannot be considered serious. See Beyerbach 49 F.3d at 1326-27 (ruling against a plaintiff who experienced a three-hour delay in receiving Tylenol for a broken hand because he did not submit any verifiable medical evidence that "delays adversely affected his prognosis"); Hill, 40 F.3d at 1189 (affirming summary judgment against plaintiffs who "have not indicated how, or even if, the four-hour delay in transporting [plaintiff] to a hospital exacerbated his medical condition"); Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990) (affirming summary judgment because plaintiff "has not shown . . . how a ten-hour delay in treatment immediately following his injury could possibly have caused him harm"); McGovern, 2006 WL 42236 at *8 (granting summary judgment because "[p]laintiff does not proffer any evidence that any delay in medical treatment exacerbated his injuries"); Mantz, 239 F. Supp.2d at 504 (granting summary judgment for defendants where the delay in receiving treatment was less than ninety minutes and the only evidence that the delay exacerbated plaintiff's injuries was his subjective testimony); Qawi, 2000 WL 1010281 at *4 (dismissing plaintiff's claims where plaintiff's complaint has not "even alluded to any harm-serious or otherwise . . . [n]or does he allege that the delay placed him at risk of suffering serious harm"). Because plaintiff has not demonstrated that his medical needs were serious, summary judgement is granted in favor

10

of defendant Stanton in his personal capacity.

### C. Allegations of Excessive Force

Defendants Carroll, McGuigan, Stanton, Merson, Sagers, and Belanger also argue that they are not liable for the alleged use of excessive force by defendants Gardels and Allen. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Personal involvement can be established through allegations of either personal direction or actual knowledge and acquiescence (deliberate indifference); however, such allegations must be made with particularity.

It is undisputed that defendants Carroll, McGuigan, Stanton, Merson, Sagers, and Belanger had no personal involvement in the alleged assault. Plaintiff attempts to claim they are liable for their deliberate indifference to the risk to plaintiff because they failed to take action to control the "known pattern of physical abuse of plaintiff by defendant Gardels." (D.I. 72 at 4) Plaintiff claims to have "filed many grievance[s] informing them that he is being abuse[d] physically and mentally by defendant Gardels at least 5 months before the assault took place." (Id. at 5)

11

This claim is unsupported by the record. While plaintiff did file grievances and sent letters to several of the defendants, most of the communications did not mention physical abuse by Gardels or any other guard. Rather, they detailed the unfair loss of privileges. Warden Carroll's affidavit states that he received a letter regarding the physical abuse by defendants Gardels and Allen. The letter, also included in the record, does not mention any specific officers and the only abuse alluded to was a line in which plaintiff wrote that correctional officers "put their hands on me and other minor stuff." (D.I. 72, Ex. D) Taken in context, this line is insufficient to give its readers actual knowledge of an impending physical assault of the serious nature alleged, nor does it give rise to knowledge of a "substantial risk of serious harm," which is necessary for one to be liable for deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). Because defendants Carroll, McGuigan, Stanton, Merson, Sagers, and Belanger were not deliberately indifferent to an unreasonable risk to plaintiff, summary judgment is granted in their favor for plaintiff's excessive use of force claim.[10]

---

[10] Because defendants Carroll, McGuigan, Stanton, Merson, Sagers, and Belanger are found not to have violated plaintiff's constitutional rights, defendants' qualified immunity will not be addressed.

12

### D.    Motion to Compel

Plaintiff has also filed a motion to compel discovery of documents, which defendants oppose as untimely. (D.I. 79, 81) Plaintiff's original discovery requests were served during July 2005 and were responded to on August 29, 2005. Discovery closed on October 27, 2005, as set by an August 23, 2005 court order. Plaintiff's motion to compel was not filed until April 18, 2006, which is six months past the deadline and also over one month after summary judgment briefing was completed. Plaintiff has provided no explanation for such a long delay. The court understands that plaintiff's confinement has limited his access to resources. However, in the time between the discovery deadline and the date plaintiff filed his motion to compel, he has also managed to file a motion to appoint counsel (D.I. 69), an extensive brief opposing partial summary judgment (D.I. 72), and a motion for extension of time (D.I. 68). Defendants have provided discovery in a timely manner, and any disputes should have been addressed prior to the close of discovery. Plaintiff's motion to compel is denied.

### V.    CONCLUSION

For the reasons stated, defendants' motion for partial summary judgment (D.I. 65) is granted. Summary judgment for all claims is granted for all defendants in their official capacities and granted for defendants Carroll, McGuigan, Stanton, Merson,

13

Sagers, Belanger, and Internal Affairs in their personal capacities. Plaintiff's motion to compel (D.I. 79) is denied. An appropriate order shall issue.